O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TRINITY CHRISTIAN CENTER OF SANTA ANA, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL KOPER, an individual; and BRITTANY KOPER, an individual,<br><br>Defendants. | Case No.: SACV 12-1049 DOC(RNBx)<br>Case No.: SACV 12-1121 DOC(RNBx)<br><br>ORDER DENYING DEFENDANTS' REQUEST FOR THE REMOVAL, DISMISSAL, OR CONSOLIDATION OR RELATED STATE AND FEDERAL CASES |

Before the Court is Defendants Brittany and Michael Koper's (Defendants') request for an order from this Court pursuant to the All Writs Act, 28 U.S.C. 1651, either requiring Plaintiff Trinity Christian Center of Santa Ana, Inc. (Trinity) to consolidate all its related state and federal cases before this Court or issuing an injunction ordering the dismissal of duplicative state claims. Koper Req. (Dkt. 21) at 3-5. Specifically,

Defendants ask that this Court either remove *International Christian Broadcasting Inc. V. Michael Koper et al* (referred to as *ICB I*), Orange County Superior Court, case no. 30-2012-00565340, and *Trinity Christian Center of Santa Ana, Inc. v. Koper* (referred to as *Trinity I*), filed in Orange County Superior Court, case no. 30-2012-00566620, or order their dismissal, and order the transfer of *International Christian Broadcasting Inc. v. Michael Koper et al.* (referred to as *ICB II*), E.D.N.Y. CV-12-3570-LDW(GRB), to this Court. After consideration, the Court DENIES Defendants' request.

**I.	Background**

The unwieldy conflagration of litigation currently before various state and federal courts centers on Defendants Brittany and Michael Koper; Brittany Koper is the granddaughter of Paul and Janice Crouch, two of the founders of Christian television network Trinity Broadcasting Network, and she and her husband Michael Koper were employed by Plaintiff Trinity Christian Center of Santa Ana until on or about September 30, 2011. Pl's Brief Re Application of the All Writs Act (*Trinity III* Dkt. 94) at 16. Trinity alleges that the firing of the Kopers was the result of Trinity's discovery of repeated acts of fraud, embezzlement, and theft, and that their terminations led to the Kopers' theft and dissemination of internal documents in an attempt to create a "media frenzy" that would distract from the Kopers' illegal acts. *Id.* at 15-19. The Kopers allege, *inter alia*, that they are being targeted with harassing and vexatious litigation as a result of their decision to become corporate "whistleblowers" who exposed the financial improprieties of various Trinity executives (including the Crouches). Def's Reply to July 25, 2012, OSC (Dkt. 61) at 1-2.

**a. Cases Brought by Trinity**

Plaintiff Trinity has, by taking various different corporate forms, sued the Kopers six times across 3 jurisdictions: Orange County Superior Court, the Central District of California, and the Eastern District of New York. The suits are as follows:

1. **Oct 18, 2011:** *Redemption Strategies Inc. v. Michael Koper et al.*, **SA CV 12-0041 DOC(RNBx)** (*RSI*).

Plaintiff Redemption Strategies, Inc. (RSI), identified in the *RSI* complaint as the assignee of the claims of two unnamed corporations, alleged, among other things, fraud and embezzlement and sought the return of over $1.3 million from the Kopers, in addition to injunctive relief. *See* Not. of Removal (*RSI* Dkt. 1). Plaintiff Trinity concedes that RSI is a "collection company formed by" Plaintiff Trinity to bring suit as the assignee of Trinity's claims against the Kopers. *See* Pl's Response to July 25, 2012, OSC (*Trinity III* Dkt. 38) at 1. Defendants removed the case to this Court on January 10, 2012, but did not answer the complaint. *See* Not. of Removal. Plaintiff RSI filed a Notice of Dismissal (*RSI* Dkt. 7) one day after the case was removed pursuant to Federal Rule of Civil Procedure 41(a); no order of dismissal was needed from the Court because no responsive pleading had yet been served. *See* Fed. R. Civ. P. 41(a)(1)(A). While at the time no reason for the dismissal was provided, Trinity asserts that the original purpose of the complaint had been to spur the Kopers to disgorge various embezzled funds, and that at the time of dismissal the Kopers had voluntarily returned what Trinity believed to be the bulk of the disputed money. *See* Pl's Brief Re Application of the All Writs Act (*Trinity III* Dkt. 94) at 18. Pursuant to Rule 41, the dismissal was without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B). There is no ongoing action in this matter.

2. **April 30, 2012:** *International Christian Broadcasting Inc. v. Michael Koper et al.* (*ICB I*), **filed in Orange County Superior Court as case no. 30-2012-00565340.**

The complaint in this ongoing state court case alleges, among other things, fraud and embezzlement, based on the same events in dispute in *RSI*. *See ICB I* Compl. Plaintiff Trinity concedes that the plaintiff in this case (ICB) was "founded . . . by Dr. Paul Crouch," who is also the founder of Plaintiff Trinity, and in its fillings Plaintiff Trinity refers to itself and the plaintiff in this case as if they are one and the same. *See* Pl's Response to July 25, 2012, OSC (*Trinity III* Dkt. 38) at 1 (referring to "TCCAB/ICB"). In addition to the Kopers, Northwestern Mutual Life Insurance Company (Northwestern Mutual) is also named a Defendant.

The Defendants moved in state court to strike Plaintiff's complaint, arguing that the federal court retained jurisdiction over the matter because *RSI* had not been remanded. Defendants cited *Allstate Ins. Co. v. Superior Court*, 132 Cal.App.3d 670 (1982), for the proposition that Trinity should not be allowed to re-file essentially the same *RSI* complaint in state court without a remand order. The state court denied Defendants' motion, noting first that Defendants had failed to show that RSI was indeed an alter ego for Trinity, since, "[n]owhere in the original or FAC, is International Christian Broadcasting Inc. or Trinity Christian Center of Santa Ana, Inc., mentioned." Minute Order, Case No. 30-2012-00565340-CU-FR-CJC (Gastelum, J.) (*Trinity III* Dkt. 80-5) at 7. The state court went on to opine that "[e]ven if Redemption Strategies Inc. was 'controlled' by IBC [sic] and Trinity, Defendant has still not established the Federal Court had jurisdiction over them. Furthermore, as argued by Plaintiff, *Allstate* did not involve a voluntarily dismissed action in Federal Court. To prevent a dismissal, defendants should have filed an answer with their notice of removal." *Id.* Finally, the state court pointed out that "the *Quackenbush Case* [cited by the Kopers] does not apply because it did not deal with the filing of a 2nd 'new' case after the federal action is voluntarily dismissed." *Id.* (citing *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372 (9th Cir. 1997)).

**3. May 4, 2012: *Trinity Christian Center of Santa Ana v. Michael Koper et al.*, (*Trinity I*), filed in Orange County Superior Court case no. 30-2012-00566620.**

This complaint seeks injunctive relief regarding trade secrets and family confidences. *See Trinity I* Compl. It arises from the same set of facts as *ICB I* and was deemed "related" to that case and transferred before the same state court judge. Minute Order, Case No. 30-2012-00565340-CU-FR-CJC (Gastelum, J.) (*Trinity III* Dkt. 80-5) at 6.

**4. June 8, 2012: *Trinity Christian Center of Santa Ana v. Michael Koper et al.* (*Trinity II*), SA CV 12-1121 DOC(RNBx).**

In a particularly bold fit of litigious incoherence, immediately after commencing actions for damages and injunctive relief in state court, Trinity filed this separate action in state court alleging the same set of facts but asking the court to force the Kopers into *arbitration* pursuant to an arbitration clause in their employment contracts that allegedly states "[b]oth the

company [Trinity] and I agree that any claim, dispute, and/or controversy that either I may have against the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) or the Company may have against me, arising from, related to, or having any relationship or connection whatsoever, with my . . . employment by, or other association with the Company shall be submitted to and determined exclusively by binding arbitration. . . ." Compl. (*Trinity II* Dkt. 1 Ex. A) ¶ 10. The complaint, perhaps understandably considering its substance, makes no mention of Trinity's own non-arbitration court proceedings in *RSI*, *ICB I*, or *Trinity I*. *See id.* *Trinity II* was removed to this Court on July 9, 2012. *See* Not. of Removal (*Trinity II* Dkt. 1).

### 5. June 27, 2012: *Trinity Christian Center of Santa Ana v. Michael Koper et al.* (*Trinity III*), SA CV 12-1049 DOC(RNBx).

This case is substantially the same as *Trinity II*, except it was initially filed in federal court; Plaintiff filed a Petition seeking an order compelling arbitration, appointing an arbitrator, enjoining the Kopers from filing claims outside of arbitration, and declaring default in arbitration proceedings because the Kopers had not responded to a May 3, 2012, Demand for Arbitration. *See* Pl's Pet. (*Trinity III* Dkt. 1). Only July 16, 2012, the Court denied Plaintiff Trinity relief despite a lack of opposition, but granted leave to re-file. *See* Minute Order (Tucker, J.) (Dkt. 19) (denying request because it "far exceeds the scope of" the Federal Arbitration Act). Plaintiff never re-filed, but, to the extent that this claim still exists in any form, it was combined with *Trinity II* on November 2, 2012, and remains before this Court. *See* Minutes of November 2, 2012, Hearing (Dkt. 98).

### 6. July 18, 2012: *International Christian Broadcasting, Inc. v. Michael Koper et al.*, EDNY CV 12-3570 LDW(GRB) (*ICB II*).

This complaint alleges that the Kopers engaged in a conspiracy to defraud, and did in fact defraud, Brittany Koper's grandmother by making false representations concerning Michael Koper's fictitious military service in Afghanistan in order to obtain a $22,000 loan "to allegedly pay back the United States Marine Corps." *ICB II* Compl. (Dkt. 1). ICB brought suit as the assignee of the (unnamed) grandmother's claims against the Kopers. *Id.* ¶ 3. The alleged

misrepresentation occurred in September 2005, and the discovery of Michael and Brittany Koper's alleged fraud occurred in December, 2011. *Id.* ¶¶ 7-11. On October 19, 2012, Magistrate Judge Gary R. Brown filed a Sua Sponte Report and Recommendation (Brown R&R) urging that the matter be dismissed for failure to meet the jurisdictional minimum. *See* Brown R&R (Dkt. 29). Judge Brown's recommendation is under consideration, but it is worth noting that in the meantime Michael Koper's counsel submitted a letter to the court stating that Michael Koper made "factually inaccurate" statements while being deposed under oath, that Michael Koper lied about traveling to Afghanistan and working for a private security company in that country, and that counsel's representations to the contrary in court proceedings were based on Koper's misrepresentations to counsel. *See* November 21, 2012, Letter to the Court (*ICB II* Dkt. 34) at 1-2.

### b. The Koper's Request for Removal and/or Dismissal and/or Consolidation

The request currently under consideration (*Trinity II* Dkt. 21) was initially made by the Kopers on September 9, 2012, after the breadth of Plaintiff's litigation strategy became clear to the Court. Plaintiff's apparent eagerness to file duplicative cases without informing various courts of the presence of related matters led this Court to issue an Order to Show Cause why Trinity should not be deemed a "vexatious litigant," *see* July 25, 2012, Order to Show Cause (*Trinity III* Dkt. 32), and while the Court subsequently concluded that "Plaintiff Trinity [had] failed to show that it is not a vexatious litigant," the Court refrained from formally designating Trinity as a vexatious litigant at that time. September 7, 2012, Minute Order (*Trinity III* Dkt. 63). Subsequently, the Court issued another Order to Show Cause why other cases involving the same parties should not be combined. *Id.* In response, the Kopers requested that the Court not only combine the cases in this jurisdiction, but also either remove, dismiss, or consolidate *ICB I*, *Trinity I*, and *ICB II*, pursuant to the All Writs Act. *See* Koper's Req. at 3-5. The Court requested additional briefing on the matter at a hearing on November 2, 2012. *See* Minutes of November 2, 2012, Hearing (*Trinity III* Dkt. 98). Oral arguments were heard on November 30, 2012. *See* Minutes of Nov. 30, 2012, Hearing (*Trinity III* Dkt. 109).

**II.   Discussion**

### a. State Court Cases (*ICB I* and *Trinity I*)

#### i. Enjoining State Court Proceedings Pursuant to the All Writs Act

The Anti-Injunction Act, 28 U.S.C. § 2283, bars this Court from issuing an injunction halting or dismissing the state court proceedings in *ICB I* and *Trinity I*. Federal intervention in state court actions is barred "in all but the narrowest of circumstances." *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005) (citing *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1271(9th Cir.1982); *Bennett v. Medtronic,* 285 F.3d 801, 805 (9th Cir.2002)). Exceptions to the Anti-Injunction Act should not "be enlarged by loose statutory construction," *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970), but rather, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings [will] be resolved in favor of permitting the state courts to proceed." *Id.* at 297. Accordingly, injunctions require "a strong and unequivocal showing" that such relief is necessary. *Bechtel Petroleum, Inc. v. Webster,* 796 F.2d 252, 253–54 (9th Cir.1986).

The authority of a district court to issue orders pursuant to the All Writs Act is limited by the Anti–Injunction Act, which prevents a federal court from enjoining the proceedings in a State court "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *See Sandpiper*, 428 F.3d at 842 (quoting 28 U.S.C. § 2283). Defendants do not argue that the first "expressly authorized by Congress" or the third "protect or effectuate its judgments" exceptions apply, and so this Court will not address them.[1]

---

[1] One of the cases cited by Defendants, *Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987), interprets the "expressly authorized by Congress" exception to mean that "where a second state court suit is fraudulently filed in an attempt to subvert the removal of a prior case," an injunction is "authorized" by 28 U.S.C. § 1446, the removal statute. *Id.* at 741. This Order will address that argument to the extent that it finds that *Lou v. Belzberg* does not support an injunction in this case. There is no question that the "protect or effectuate its judgments" exception does not apply here, as it only allows a court "to prevent state litigation of an issue that previously was presented to *and decided by* the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).

-7-

An injunction "necessary in aid of [a district court's] jurisdiction" is generally used to enjoin parallel state *in rem*, not *in personem*, proceedings. *See Vendo Vo. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) ("We have never viewed parallel in personem actions as interfering with the jurisdiction of either court. . . ."); *Sandpiper*, 428 F.3d at 844 ("Indeed, the general rule is still that '[w]here a suit is strictly *in personam* . . . there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined[,] ... because [the subsequent action] neither ousts the jurisdiction of the court in which the first suit was brought, nor does it delay or obstruct the exercise of that jurisdiction, nor lead to a conflict of authority where each court acts in accordance with the law.") (quoting *Kline v. Burke Constr. Co.,* 260 U.S. 226, 232 (1922)).

However, a parallel *in personem* action may merit an injunction "where the state court proceeding threatens to 'render the exercise of the federal court's jurisdiction nugatory.'" *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002) (quoting *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir.1996)). The "nugatory" bar is an exceedingly high one, and the "very limited circumstances where such a threat exists in *personem* cases" include school desegregation actions involving conflict between state and local courts and cases affecting federal settlements over which the federal court retains jurisdiction. *Id.* at 802 (citing *Flanagan v. Arnaiz,* 143 F.3d 540, 545 (9th Cir.1998) (injunction necessary to effectuate a settlement agreement over which federal court had retained jurisdiction); *Swann v. Charlotte-Mecklenburg Bd. of Ed.,* 501 F.2d 383, 383-384 (4th Cir.) (invoking All Writs Act in school desegregation case)). In *Bennett*, the Ninth Circuit held that an injunction of state court proceedings related to an employment contract dispute also before the federal court "cannot be fairly characterized as 'necessary' in the aid of federal jurisdiction," since such broad injunctive powers would "effectively eliminate parallel or related federal and state proceedings, a result that is at odds with our constitutional structure and the intent of the Act itself." *Bennett*, 285 F.3d at 807.

Here, an injunction is likewise not necessary in order to protect this Court's jurisdiction. There exist no conflicting state and federal orders, and the Court is free to proceed with the cases currently before it, *Trinity II* and *Trinity III*. As in *Bennett*, the existence of parallel

employment-related *in personem* actions regarding the same set of facts does not rise to the level of "render[ing] the exercise of the federal court's jurisdiction nugatory." *See Bennett*, 285 F.3d at 806.

Defendants cite dicta from *Lou v. Belzberg* for the proposition that "where a second state court suit is fraudulently filed in an attempt to subvert the removal of a prior case, a federal court may enter an injunction," but fail to note that, in that case, the district court injunction was found to be "improvidently granted" because the new case in state court involved, *inter alia*, "additional counsel" and "additional defendants." 834 F.2d 730, 741 (9th Cir. 1987). Here, applying the same standards to *RSI*, *Trinity I* and *ICB I*, the Court notes that an additional defendant, Northwestern Mutual, has been added to *ICB I* claim, along with that defendant's counsel. Also, the state court complaints contain slightly different claims for damages, and different prayers for relief. In addition, while in the past the Court has noted that Trinity's duplicative litigation style may be harassing, *fraud* on the part of Trinity in filing its new state law claims has not been established by the Defendants. At oral arguments, Defendant counsel appeared to urge this Court to find that fraud had indeed been present in the filing of Trinity's later complaints, but the Court has not been presented with sufficient evidence to make such a finding.

Defendants cite a further inapposite case to support the broad argument that "plaintiffs do not have the right to maintain multiple, separate causes of action involving the same subject matter at the same time against the same defendants." Def's Brief Concerning the All Writs Act (*Trinity III* Dkt. 93) at 9 (citing *Adams v. California Dept. of Health Services*, 487 F.3d 684 (9th Cir. 2007)). In fact, *Adams* holds that plaintiffs have "no right to maintain two separate actions involving the same subject matter at the same time *in the same court* and against the same defendant." 487 F.3d at 688 (emphasis added) (internal quotations omitted). *Adams* did not involve a district court enjoining a state court action, but rather a district court dismissing a subsequent action before the district court when the plaintiff in both cases had been denied leave to amend her initial complaint, had proceeded to judgment on her unamended complaint, and then had attempted to pursue a new case with the additional claims. *Id.* Defendants identify no

case, in this circuit or any other, in which a district court properly enjoined an ongoing state court proceeding, let alone on facts similar to the ones presented here.

Defendants' only other relevant citation is *Allstate Ins. Co. v. Superior Court*, 132 Cal.App.3d 670 (1982), a case that damages Defendants' argument far more than it helps. That case held that a state court lacked jurisdiction to proceed with an *amended complaint* when the original complaint had been removed to federal court, then dismissed with the understanding that a *new action would be filed in state court. Allstate*, 132 Cal.App.3d at 676. In other words, the federal "dismissal 'without prejudice' permitted plaintiff to pursue his claims in another action," placing plaintiff "in a 'legal position' as if he had never brought" the initial complaint. *Id.* at 676-77. It is worth noting that Defendants first cited this case in an unsuccessful Motion to Strike Plaintiff's Complaint before the state court in *ICB I*. *See* Def's Response to OSC (*Trinity III* Dkt. 66) at 4.

While Defendants insisted to this Court that the *ICB I* judge "made it clear that the denial was based on the fact that there was no evidence *on the face of the pleadings* that showed Redemption Strategies and ICB were the same parties," and that "[u]nder California law, the state court is limited to the face of the pleadings or items of which the Court takes judicial notice," *id.* at 5 (emphasis in original), this representation is misleading at best. The *ICB I* order held that "[e]ven if Redemption Strategies Inc. was 'controlled' by IBC [sic] and Trinity, Defendant has still not established the Federal Court had jurisdiction over them," and that "*Allstate* did not involve a voluntarily dismissed action in Federal Court. To prevent a dismissal, defendants should have filed an answer with their notice of removal." Minute Order, Case No. 30-2012-00565340-CU-FR-CJC (Gastelum, J.) (*Trinity III* Dkt. 80-5) at 7. Finally, the *ICB I* order noted that Defendants' cited cases "did not deal with the filing of a 2nd 'new' case after the federal action is voluntarily dismissed." *Id.*

Accordingly, Defendants request that this Court enjoin state court proceedings in *ICB I* and *Trinity I* is DENIED.

### ii. Removing State Court Proceedings Pursuant to the All Writs Act

The All Writs Act gives federal courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). In the context of removal, however, parties "may not, by resorting to the All Writs Act, avoid complying with the statutory requirements for removal." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32-33 (2002) (citing *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (All Writs Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate")). In *Syngenta*, the Supreme Court held that the removal of a state court case that threatened to violate a federal court settlement was improper, and upheld the Eleventh Circuit's holding that the All Writs Act does not provide subject matter jurisdiction over a case in which the district court lacks original jurisdiction. *Id.* at 31.

Defendants seek to distinguish this case from *Syngenta* by arguing that the Court has original jurisdiction over *ICB I* and *Trinity I*, but that, due to a series of unfortunate events beyond Defendants control, they were not able to remove those cases in a timely manner. *See* Kopers' Brief Concerning Subject Matter Jurisdiction, Arbitrability, and the All Writs Act (*Trinity III* Dkt. 78) at 6 ("There was no waiver of the Kopers' right to remove because removal was not possible."). They claim that diversity jurisdiction exists in *ICB I* because they are citizens of New York, Northwest Mutual is a citizen of Wisconsin, and Trinity is a citizen of California. *Id.* at 5. They argue that *Trinity I*, while seeming to lack original jurisdiction on its own, was originally part of the *RSI* claim and so retains that case's jurisdiction. *Id.* at 5-6.

Regarding *ICB I*, Defendants assert that, because co-defendant Northwestern Mutual had an "objection to the removal of *ICB I* initially, the Kopers were prevented from exercising their rights under the removal statute as 28 U.S.C. § 1446 requires *all* defendants to consent." *Id.* at 6. Defendants submit nothing to support their claim that Northwestern Mutual objected to removal, nor do they explain Northwestern Mutual's apparent change of heart. Defendants also provide no explanation for why they did not attempt to remove *Trinity I* pursuant to the removal statute, other than to note that "Trinity has argued that diversity jurisdiction is impossible without a claim for monetary recovery." *Id.* at 5.

1    Plaintiffs dispute Defendants' account, and argue that the Court does not have original
2 jurisdiction over *ICB I* and *Trinity I*. Pl's Reply (*Trinity III* Dkt. 87) at 9-10. The Court need
3 not decide whether original jurisdiction exists over *ICB I* and *Trinity I*, however, because
4 *Syngenta* clearly held that parties "may not, by resorting to the All Writs Act, avoid complying
5 with the statutory requirements for removal." *Syngenta*, 537 U.S. at 32-33. If Defendants
6 believed that *ICB I* and *Trinity I* were either continuations of *RSI* or were removable in their
7 own right, the proper course of action under the federal removal statute would have been to file
8 a notice of removal with this Court within 30 days of their receipt of those pleadings. *See*
9 U.S.C. § 1446(b). Plaintiffs would have had an opportunity to challenge those removals under
10 the same statute, and Defendants would have had an opportunity to argue for removability.

11   Defendants have no legal support for their contention that it would be a proper for this
12 Court to ignore the requirements of the federal removal statute and instead use the All Writs Act
13 to pluck ongoing cases out of state court. Defendants' strongest argument appears to be *Canady*
14 *v. Allstate Ins. Co.*, 282 F.3d 1005 (8th Cir. 2002), which stated that "[a]s long as the original
15 lawsuit was properly brought in federal court, the federal court retains subject matter jurisdiction
16 to remove any subsequent state law action to federal court for purposes of applying the All Writs
17 Act." Koper's Brief Concerning the All Writs Act at 4 (quoting *Canady*, 282 F.3d at at 1013).
18 However, in that case, "the purpose of applying the All Writs Act" was to "protect an issue
19 necessarily decided in a prior case," specifically a denial of class certification that was being
20 relitigated in the subsequent action. *Id.* Here, no issue was decided in *RSI*, since *RSI* was
21 dismissed before Defendants even answered the complaint. In addition, and far more
22 importantly, *Canady* predates *Syngenta*, and the Supreme Court in *Syngenta* completely rejects
23 the reasoning of the Eighth Circuit in *Canady*. *See Syngenta*, 537 U.S. at 28.

24   Defendants cite no case in which a district court has done what Defendants ask this Court
25 to do, and indeed no case that comes close. As discussed in Part II(a)(i) of this order, federal
26 intervention in state court actions is barred "in all but the narrowest of circumstances,"
27 *Sandpiper*, 428 F.3d at 842, and "[a]ny doubts as to the propriety of a federal injunction against
28 state court proceedings [will] be resolved in favor of permitting the state courts to proceed." *Atl.*

*Coast Line*, 398 U.S. at 297.  Accordingly, Defendants' request that this Court remove *ICB I* and *ICB II* is DENIED.

### b.  The Transfer of *ICB II*

Defendants also request that this Court use its power under the All Writs Act to "consolidate [*ICB II*] with the matters pending before the Court." Kopers' Brief Concerning the All Writs Act at 7.   That case, which may or may not be dismissed *sua sponte* pursuant to Magistrate Judge Gary A. Brown's Report and Recommendation, *see* Brown R&R (*ICB II* Dkt. 29), involved the same parties as the cases currently before this Court, but a potentially distinct issue based on a separate set of events.  Outside of the employment context, Trinity alleges that the Kopers engaged in a conspiracy to defraud, and did in fact defraud, Brittany Koper's grandmother by making false representations concerning Michael Koper's fictitious military service in Afghanistan, resulting in the Kopers receiving a loan in the amount of $22,000.  *ICB II* Compl. (Dkt. 1).

28 U.S.C. § 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)).  However, it is the *transferor* district court that has the authority to "transfer . . . to any *other* district," and a motion for transfer should properly be made before that court.  *See* 28 U.S.C. § 1404(a).

Accordingly, Defendants' request for this Court to order the transfer of *ICB II* to this district is DENIED.  If that case is not dismissed, Defendants should file a motion to transfer with the district court currently exercising jurisdiction over that case, in the Eastern District of New York.

### III.  Disposition

-13-

Defendants Brittany and Michael Kopers' Request for the removal, dismissal, or enjoining of related state court and out-of-district cases is hereby DENIED.

DATED: December 14, 2012

*David O. Carter*

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE